UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

═══════════════════════════════

MEGAN SHIMBURSKI, MAKENNA
SHIMBURSKI, JOHN SHIMBURSKI, MARTHA
SPAULDING,

                         Plaintiffs,

       v.                                                    **DECISION AND ORDER**

                                                             17-CV-699S

DETECTIVE GREGORY McCARTHY,
DETECTIVE MATTHEW NOECKER,
DETECTIVE JACK GRAHAM, DUANE
DeGOILER, THE COUNTY OF ERIE,
SHERIFF TIMOTHY HOWARD, CAPTAIN
GREGORY SAVAGE, TOM NAVARRO,

                         Defendants.

═══════════════════════════════

## I.      Introduction

       Before this Court is the Motion of the remaining Defendants (collectively the "County Defendants") (Docket No. 25) to Dismiss the Amended Complaint (Docket No. 20).  Responses to this motion were due by December 14, 2017 (Docket No. 27), which Plaintiffs submitted (Docket No. 28).  Replies initially were due by December 21, 2017 (Docket No. 27), but the County Defendants moved for extension of time (Docket No. 29), which was granted nunc pro tunc on February 1, 2018 (Docket No. 31), after they filed their Reply (Docket No. 30).

       One defendant, Town of Sardinia Dog Warden Duane DeGolier, did not answer or move against the Amended Complaint by September 28, 2018.  This Court then set a deadline for DeGolier's response to the Amended Complaint.  (Docket No. 32.)  That Order also dismissed Defendants' Motions to Dismiss the original Complaint (Docket

Nos. 14 (DeGolier), 17 (County Defendants) as moot (Docket No. 32).  DeGolier then moved to dismiss the Amended Complaint (Docket No. 33) and later entered into a Stipulation dismissing claims against him (Docket No. 35).

Following briefing of the County Defendants' present Motion to Dismiss, it was deemed submitted without oral argument.  For the reasons stated herein, the County Defendants' Motion to Dismiss the Amended Complaint (Docket No. 25) is **granted in part, denied in part**.

## II.     Background

### A.  Seizure of Lady, July 2014

This is a civil rights action for violations of the Fourth and Fourteenth Amendment rights of Plaintiffs concerning the seizure and treatment of Plaintiffs' family dog, Lady, and subsequent dangerous dog proceeding.  Plaintiffs allege that Erie County Sheriff's detectives unlawfully trespassed on Plaintiffs' property and, in the course of this search, shot and injured Lady (Docket No. 20, Am. Compl. ¶¶ 1, 30).  Plaintiffs claim that Lady then was seized by Sheriff's Department officers by the officers' unreasonably shooting Lady (id. ¶¶ 1, 18).

A dangerous dog hearing was held in Town of Sardinia Court and Plaintiff Megan Shimburski ("Plaintiff" when in the singular) alleges that she was not allowed to present evidence in that proceeding.  As a result, Lady was deemed to be a dangerous dog and suffered at the hands of Defendants.  While in Defendants' custody and care, Lady suffered further injuries including possible cigarette burns.  (Id.)

Plaintiff Megan Shimburski was visiting her parents, John Shimburski and Martha Spaulding, on July 25, 2014, with her children, among them five-year-old Plaintiff

Makenna Shimburski, and her dog, Lady (id. ¶¶ 5, 6, 7, 8, 27).  On that day, Sheriff's Deputies defendants Graham, Noecker, and McCarthy appeared at John Shimburski and Martha Spaulding's residence on Pratham Road in East Concord (id. ¶¶ 6, 26-27). McCarthy and Noecker went to the back yard (while Graham went to the front) and were greeted by Lady, a two-year-old pit bull terrier (id. ¶¶ 29, 8, 30).  Lady "sauntered around the corner" and was shot in the head by McCarthy (id. ¶ 30).  Makenna was with Lady at the time and the bullet grazed Lady and "nearly causing the fatal demise" of Makenna (id. ¶¶ 30, 1), although Plaintiffs make no claim for any injuries to her save emotional wounds from the incident (see id. ¶ 55).  McCarthy allegedly shot Lady because he thought she was charging him (id. ¶ 32).  Plaintiffs contend that Lady was yards away from Detective McCarthy when he shot her and there was no evidence of the Deputies being bitten (id. ¶ 42).

Meanwhile, John Shimburski and Martha Spaulding have their own dog, a Shepherd mix named Ace (id. ¶ 8), and Ace ran out to Graham when he approached the front and Ace then stopped (id. ¶ 29); that dog was not shot.

Plaintiffs describe Lady as a good-natured dog, gentle and loving, who was allowed to wander off leash on her large country back yard (id. ¶ 33).

The Deputies then entered the residence without permission and seized Plaintiff Megan Shimburski (id. ¶ 34).  Megan Shimburski asked if they had a warrant and they answered that they did not.  She then asked to be allowed to seek veterinary care for Lady but was denied; the officers told her that they had to wait for an animal control officer before Lady could be moved.  Furthermore, the officers' vehicles blocked her car.  (Id.)

As ordered, Megan Shimburski called her parents (id. ¶ 34); when they arrived the Deputies searched their home, ostensibly looking for her former boyfriend (id. ¶¶ 35, 28, 63).  Plaintiffs deny that the Deputies were lawfully present there or had consent, a warrant, or any exigent circumstance to justify their entry and continued presence in Plaintiffs' home (id. ¶¶ 36, 61, 62).  Defendants refused requests by Megan Shimburski and her parents to leave or to seek veterinary care for Lady (id. ¶ 38).

One hour later, Megan and John Shimburski were allowed to leave with Lady (after a further delay for photographs of the wounded dog) and Lady was provided life-saving surgery costing $1,400 in veterinary bills (id. ¶ 41).

Megan Shimburski later posted statements about this incident on Facebook starting on or about August 3, 2014, with a Facebook group formed in Lady's honor and contact information for the Sheriff's office published (id. ¶ 43).  On August 5, 2014, eleven days after the shooting, the Deputies filed a petition in Sardinia Town Court alleging that Lady was a "dangerous dog" under the New York Agriculture and Markets Law § 123 and sought her seizure (id. ¶ 44).  Later that day, Lady was seized by animal control officer DeGolier (id. ¶ 45).  Plaintiff visited Lady in the kennel on August 8 and saw additional facial sores on Lady that resembled cigarette burns which were not on her face when Lady was seized (id. ¶ 46).  Plaintiffs incurred additional veterinary expenses for treatment of these sores (id.).

Plaintiffs next argue that the dangerous dog hearing was conducted in an improper manner, with Plaintiffs and their witnesses were excluded from the hearing room while the prosecution and Government witnesses were allowed in, as well as fifteen Sheriff's Deputies (id. ¶ 48).  Megan Shimburski alleges fifteen Sheriff's Deputies were in the

courtroom forming a confrontational atmosphere (id.).   Assistant County Attorney defendant Tom Navarro participated in the hearing, Megan claiming that Navarro allegedly encouraged the claimed unconstitutional process during that hearing (id.).   After denying Megan Shimburski's motion to dismiss, Town Justice Heintz denied her the opportunity to produce witnesses and to be heard, finding that Lady was a dangerous dog (id.).   Plaintiffs do not allege what happened to Lady after that decision, cf. N.Y. Agric. & Mkts. Law § 123(2) (ordering spaying of a dog , microchipping, secure confinement, restraint, or muzzling), (3) (upon finding a dog is dangerous, the justice may order humane euthanasia or permanent confinement upon specific findings and, if ordering euthanasia granting the owner time to file a notice of appeal).

### B.  Pleadings

Plaintiffs filed their original Complaint on July 25, 2017 (Docket No. 1).   Defendant Duane DeGolier moved to dismiss for failure to state a claim (Docket No. 14) and the County Defendants also moved to dismiss (Docket No. 17).   After responding to these motions (Docket Nos. 18, 19), Plaintiffs filed their Amended Complaint (Docket No. 20). The County Defendants then moved to dismiss the Amended Complaint in the pending motion (Docket No. 25).   As previously stated, this Court deemed moot the motions to dismiss the initial Complaint (Docket No. 32).

In the Amended Complaint (Docket No. 20), Plaintiffs now allege six causes of action (including the final, unenumerated claim for punitive damages).   In the First Cause of Action, Plaintiffs allege against McCarthy, Noecker, and Graham in their individual

capacities[1] violated Plaintiffs' Fourth and Fourteenth Amendment rights in unlawfully damaging and depriving them of their property, Lady, a companion animal (id. ¶¶ 51-59).

The Second Cause of Action alleges that Defendants McCarthy, Noecker, and Graham (in their individual capacities) violated Plaintiffs' Fourth and Fourteenth Amendment rights by their unlawful entry without a warrant on July 25, 2014 (id. ¶¶ 61-72).

The Third Cause of Action alleges these Defendants (again in their individual capacities) violated Plaintiffs' Fourth and Fourteenth Amendment rights against unreasonable seizure, false arrest, and false imprisonment of Plaintiffs for about an hour when they were detained during the search on July 25, 2014 (id. ¶¶ 74-88, 41).

The Fourth Cause of Action alleges establishment of a municipal policy by Defendants Erie County Sheriff Timothy Howard and Erie County (and the individual Deputies, in their official and individual capacities) to deprive Plaintiffs of their property in violation of the Fourth and Fourteenth Amendments by shooting Plaintiffs' dog (id. ¶¶ 90-95). Plaintiffs cite to two other examples of Sheriff's Department shooting dogs during searches to allege a pattern and practice that was applied to Lady (id. ¶ 91), with one example occurring in 2012 and the other in 2016 (after the shooting alleged here) (id.).

The Fifth Cause of Action is alleged by Plaintiff Megan Shimburski only; she contends defendants Captain Gregory Savage and Assistant County Attorney Thomas Navarro violated her Fourth, Sixth, and Fourteenth Amendment rights during the dangerous dog hearing (id. ¶¶ 97-104). Plaintiff contends the process afforded during the August 12, 2014, dangerous dog hearing was inadequate (id. ¶ 99). Plaintiff points

---

[1]This is the only Cause of Action alleged against DeGolier for his role is seizing Lady, id. ¶ 58, but claims against DeGolier were dismissed by stipulation, Docket No. 35.

out that Deputies lined the walls of the courtroom, intimidating her, with Captain Savage and Assistant County Attorney Navarro as part of the entourage; that Captain Savage supervised Detectives Graham, McCarthy, and Noecker (id. ¶¶ 100-01).  She alleges that Navarro, as a County Attorney, "orchestrated and directed such violations of the due process taking place" against her (id. ¶ 102).  Town Justice Heintz deprived Plaintiff of an opportunity to testify at the hearing, all while Navarro and Savage stood silently "tacitly enabling and causing Plaintiff's due process rights to be violated" (id. ¶ 103).

The unnumbered last Cause of Action seeks punitive damages from Defendants Erie County, Navarro, Savage, McCarthy, Noecker, and Graham (id. ¶¶ 106-07; cf. id. ¶ 106 (alleges Sheriff Howard also)) for their respective deliberate indifference to Plaintiffs' constitutional rights (id. ¶ 106).

Plaintiffs here demand compensatory, exemplary, and punitive damages, costs, and recovery of their attorneys' fees under 42 U.S.C. § 1988 (id. at 31).

C.  Motion to Dismiss Amended Complaint (Docket No. 25)

The County Defendants move to dismiss discrete causes of action and particular Defendants (Docket No. 25, Defs. Memo. at 2).  They seek dismissal of the First Cause of Action for failing to state a valid cause of action because there is no due process claim alleged for the injuries to Lady (id. at 2, 6-8).  They next argue that the Fourth Cause of Action against Deputies McCarthy, Noecker, and Graham against them in their official capacities should be dismissed because Plaintiffs fail to allege a specific policy or custom that deprived them of a constitutional right (id. at 2, 8-12).  Defendants argue that this Cause of Action also fails against Erie County and Sheriff Howard in his official capacity (id. at 2, 12-15).  The County Defendants contend that the claims against Captain Savage

and Assistant County Attorney Navarro (the Fifth and punitive Sixth Causes of Action) should be dismissed because they had no role in the conduct of the dangerous dog proceeding Plaintiff complains is procedurally defective (id. at 2, 15-19).  Finally, they fault the Sixth punitive damages claim because Plaintiffs failed to allege factual allegations of malice or intentional conduct to warrant punitive damages (id. at 2-3, 19-20).

      D.  Plaintiffs' Responses (Docket No. 28) and Defense Reply (Docket No. 30)

Plaintiffs respond that these grounds for dismissal either should be rejected or granted on a limited basis (Docket No. 28, Pls. Memo. at 2).  They contend that Defendants misconstrue the First Cause of Action; it was not a due process claim alleged, but an unreasonable seizure claim under the Fourth Amendment (as incorporated by the Fourteenth Amendment to apply to municipal defendants) (id. at 2-5, see Mapp v. Ohio, 367 U.S. 643 (1961); Aguilar v. Texas, 378 U.S. 108 (1964)).

They next argue that there is little difference between individual and official capacity (id. at 5-6).  They claimed they alleged Sheriff Howard acted in his official capacity due to deliberate indifference perpetrated by policymakers towards officers' interactions with animals and the void of proper leadership and training (id. at 6).  They contend that they alleged a policy or custom, here the failure to train properly Deputies in their engagement with companion animals (id. at 6-9).  Plaintiffs point to the Deputy defendants being subordinates to the Sheriff and therefore under his training (or lack thereof) (id. at 9-10).

Megan Shimburski then argues that the "excessive number of uniformed personnel in a courtroom can create" a hostile environment (id. at 10-13).  She argues that Navarro and Savage lacked the authority to order two of her witnesses from the hearing (id. at 14),

although the Amended Complaint (Docket No. 20) did not allege that Navarro had any role in excluding the witnesses and that Savage threatened and kicked out the witnesses (Docket No. 20, Am. Compl. ¶ 101).

Megan Shimburski next argues that she amended the Complaint to remove paragraphs 107-10, rendering Defendants' present objections to those sections moot (Docket No. 28, Pls. Memo. at 15-16).

Plaintiffs then conclude that the punitive damages claims should remain against Defendants in their individual capacities (id. at 16-18), see Smith v. Wade, 461 U.S. 30, 35-36 (1983), acknowledging that municipalities cannot be held liable for punitive damages (id. at 16-17). As for Navarro and Savage, Plaintiffs contend that their actions alleged in the Fifth Cause of Action shows their callous disregard for Megan Shimburski's rights (id. at 17-18). As for the detective Defendants, Plaintiffs conclude that the County Defendants failed to counter their contention that these Defendants' actions were reckless or in callous disregard of Plaintiffs' rights (id. at 18).

While dismissing their substantive due process claim from shooting Lady, the County Defendants reply that the Fourth Amendment allegation still fails for the First Cause of Action, stating that Plaintiffs have not cited decisional law supporting the proposition that injury to a dog constitutes a "seizure" under the Fourth Amendment (Docket No. 30, Defs. Reply Memo. at 2-3). They deny that they moved to dismiss the Fourth Amendment claims in the Second and Third Causes of Action (id. at 3). They contend that the First Cause of Action seeks relief for the dog and conclude that the dog's injuries are not actionable under § 1983 (id.). The Fourth Cause of Action should be dismissed because Plaintiffs failed to allege a specific policy or custom deprived them of

their constitutional right, instead asserting the conclusory allegations of their § 1983 claims (id. at 3-4, 4-6).

As for the Fifth Cause of Action, the County Defendants reply that Megan Shimburski has not alleged a connection between Navarro and Savage and "other unspecified uniformed officers in the courtroom" (id. at 6-7).  They also deny that the presence of these officers was not inherently prejudicial (id. at 7, citing Holbrook v. Flynn, 475 U.S. 560, 567-68 (1986)).  They offer that these officers may not have been Sheriff's Deputies and may have been present for other cases to be heard that night (id. at 8).

### III.   Discussion

#### A.  Applicable Standards

##### 1.  Motion to Dismiss

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court cannot dismiss a Complaint unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 554 (2007), a Complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face," id. at 570 (rejecting longstanding precedent of Conley, supra, 355 U.S. at 45-46).  To survive a motion to dismiss, the factual allegations in the Complaint "must be enough to raise a right to relief above the speculative level," Twombly, supra, 550 U.S. at 555.  As recently reaffirmed by the Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009), rev'g Iqbal v. Hasty, 490 F.3d 143 (2d Cir. 2007),

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.' [Twombly, supra, 550 U.S.] at 570 . . . .  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556 . . . . The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."' Id., at 557 . . . (brackets omitted)."

Iqbal, supra, 556 U.S. at 678 (citations omitted).

A Rule 12(b)(6) motion is addressed to the face of the pleading.  The pleading is deemed to include any document attached to it as an exhibit, Fed. R. Civ. P. 10(c), or any document incorporated in it by reference.  Goldman v. Belden, 754 F.2d 1059 (2d Cir. 1985).  In considering such a motion, the Court must accept as true all of the well pleaded facts alleged in the Complaint.  Bloor v. Carro, Spanbock, Londin, Rodman & Fass, 754 F.2d 57 (2d Cir. 1985).  However, conclusory allegations that merely state the general legal conclusions necessary to prevail on the merits and are unsupported by factual averments will not be accepted as true.  New York State Teamsters Council Health and Hosp. Fund v. Centrus Pharmacy Solutions, 235 F. Supp. 2d 123 (N.D.N.Y. 2002).

2.  Civil Rights Violations, 42 U.S.C. § 1983

To prevail on their § 1983 claim, "two elements must be met:  (1) defendants' conduct must be committed by a person acting under color of state law; and (2) this conduct must deprive a person of 'rights, privileges, or immunities secured by the Constitution or laws of the United States," Skinner v. Chapman, 326 F. Supp. 2d 431, 433 (W.D.N.Y. 2004) (Larimer, J.), quoting Parratt v. Taylor, 451 U.S. 527, 535 (1981).  The state action element is not disputed here, with all municipal employees or a municipal defendant.

The Fourth Amendment to the United States Constitution provides that

"the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized,"

U.S. Const. amend. IV.   "Effects" include personal property, United States v. Place, 462 U.S. 696, 700 (1983); see Skinner, supra, 326 F. Supp. 2d at 433 (assuming under New York Agriculture and Markets Law that dogs are personal property, citing N.Y. Agric. & Mkts. Law § 109).

The Fourth Amendment also prohibits "the '[e]xcessive or unnecessary destruction of property in the course of a search,'" Frederique v. County of Nassau, 168 F. Supp. 3d 455, 475 (E.D.N.Y. 2016) (quoting Smith v. City of N.Y., No. 04 Civ. 3286, 2010 WL 3397683, at *13 (S.D.N.Y. Aug. 27, 2010) (when defendants mortally wounded plaintiff's dog)).

In the context of the wounding of a dog during the conduct of a search, courts have recognized the killing of a dog during a search constitutes destruction of property and a seizure under the Fourth Amendment, Dziekan v. Gaynor, 376 F. Supp. 2d 267, 270 (D. Conn. 2005) (citing cases).   In  Dziekan, accepting the government's "strong interest in allowing law enforcement to protect themselves and the citizenry from animal attacks," the District of Connecticut acknowledged (on defendant's summary judgment motion) that courts have held the killing in that circumstance is not an unreasonable seizure, id. at 271 (citing cases), with the focus on the imminent threat posed by the dogs, id.  When the killing of the dog, however, does not pose an imminent danger, that killing constitutes an unreasonable seizure, id. (citing other cases).  In Dziekan, the court concluded that a 55-

to 60-pound dog shot fifteen feet from one defendant posed an imminent danger, id. at 271.

Plaintiff has the burden to prove that a seizure was unreasonable, Carroll v. County of Monroe, 712 F.3d 649, 651 (2d Cir. 2013) (per curiam).  Reasonableness is objective inquiry based on the totality of the circumstances and not the officer's subjective intent, Graham v. Connor, 490 U.S. 386, 397 (1989); Cabisca v. City of Rochester, No. 14CV6485, 2019 WL 5691897, at *10 (W.D.N.Y. Nov. 4, 2019) (Feldman, Mag. J.). The Graham Court admonished that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation," Graham, supra, 490 U.S. at 396-97.  Applying this calculus "is often difficult," Cabisca, supra, 2019 WL 5691897, at *11.

The Fourth Cause of Action alleges the existence of a municipal policy to violate Plaintiffs' rights.  Plaintiffs need to allege an official policy or custom that caused them to be subject to denial of constitutional right, Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995) (Docket No. 25, Defs. Memo. at 9).  Municipalities, such as Erie County, are not vicariously liable for the actions of its employees and must have committed the constitutional violation itself, Monell v. Department of Soc. Servs., 436 U.S. 658, 691 (1978) (id. at 9-10).  One court has held that

> "to sufficiently plead a Monell claim, the complaint 'must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively,' and, 'the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that  it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation,'"

Bagley v. City of Sunnyvale, No. 16-cv-02250-JSC, 2017 WL 5068567, at *4 (N.D. Cal. Nov. 3, 2017) (quoting AE ex rel. Hernandez v. County of Tulare, 666 F.3d 631, 637 (9th Cir. 2012) (internal citation omitted)).

      B.  First Cause of Action

Defendants move to dismiss Plaintiffs' First, Fourth, and Fifth Causes of Action and their claims for punitive damages (Docket No. 25).  They argue that the Amended Complaint should be dismissed in its entirety against Erie County and Sheriff Howard (id., Defs. Memo. at 3), although named only in the Fourth Cause of Action; against McCarthy, Noecker, and Graham in their official capacities (id.) (again named only in that capacity in the Fourth Cause of Action); and against Navarro and Savage (id.) (only named in the Fifth and punitive damages causes of action hereinafter called the "Sixth Cause of Action," cf. Docket No. 25).  Defendants do not address the Second and Third Causes of Action (see Docket No. 30, Defs. Reply Memo. at 3).  Thus, Defendants' motion becomes a motion for partial dismissal of the case; some claims and parties will remain after if this motion were granted in full.

Plaintiffs have alleged that Lady was Megan Shimburski's personal property (Docket No. 20, Am. Compl. ¶¶ 8, 30) subject to protection under the Fourth Amendment, see Matteson v. Hall, No. 18CV6772, 2019 WL 2192502, at *6 (W.D.N.Y. May 21, 2019) (Telesca, J.) (denying motion to dismiss).

The parties agree that Plaintiffs have not alleged a due process (Fifth or Fourteenth Amendment) violation.  Their claim in this action (especially in the First Cause of Action) is under the Fourth Amendment, not the Fourteenth Amendment substantive due process provision.

To determine whether a seizure under the Fourth Amendment is unreasonable, this Court would need to balance (and Plaintiffs need to allege in the first instance) the nature and quality of the intrusion of Plaintiffs' Fourth Amendment interest (here Lady's well-being) against the governmental interest justifying the intrusion (searching for Megan Shimburski's former boyfriend and the danger posed by Lady) and determine whether the totality of the circumstances justified the particular sort of seizure, Carroll, supra, 712 F.3d at 651 (quoting Tennessee v. Garner, 471 U.S. 1, 8-9 (1985)); Cabisca, supra, 2019 WL 5691897, at *10 (decision following trial).

This Motion poses the issue whether Plaintiffs alleged (in their First Cause of Action) that Defendant McCarthy's wounding of a family dog was an unreasonable seizure in violation of the Fourth Amendment. The parties fail to cite cases on this precise point. This Court has found cases when the dog is killed during the course of the search and the killing constitutes a Fourth Amendment seizure, Carroll, supra, 712 F.3d at 651; Van Patten v. City of Binghamton, 137 F. Supp. 2d 98, 107 (N.D.N.Y. 2001); Frederique, supra, 168 F. Supp. 3d at 475.

Whether the seizure of property (the killing of the dog) is unreasonable depends upon the balance of the nature and quality of the intrusion on Plaintiffs' Fourth Amendment interests and the Government's interest alleged to justify the intrusion, Garner, supra, 471 U.S. at 8-9; Carroll, supra, 712 F.3d at 651; Dziekan, supra, 376 F. Supp. 2d at 270, where that interest is protection of the officers and the public against a dangerous animal, Dziekan, supra, 376 F. Supp. 2d at 270. Where harm is imminent, courts have held that the seizure was reasonable, e.g., id. (citing cases). When the dog is killed and "not merely injured or detained—the intrusion on the owner weighs heavily

in favor of finding the seizure unreasonable and constitutional," Kendall v. Olsen, 237 F. Supp. 3d 1156, 1167 (D. Utah 2017); Matteson, supra, 2019 WL 2192502, at *7.

Courts also noted specific considerations to keep in mind when a dog is killed in this context.  There is the "severe intrusion given the emotional attachment between a dog and an owner," Carroll, supra, 712 F.3d at 651; see Kendall, supra, 237 F. Supp. 3d at 1167 (most dog owners think of dogs solely in terms of emotional relationship rather than property relationship).  On the other side, the governmental interest may be significant since dogs may represent a serious risk to safety of officers and the general public, and it may be "reasonable for an officer to shoot a dog that he believes poses a threat to his safety or the safety of the community," Carroll, supra, 712 F.3d at 651.  The law does not require the officer to wait for the dog to approach biting distance or is leaping before taking protective action, Dziekan, supra, 376 F. Supp. 2d at 272; Cabisca, supra, 2019 WL 5691897, at *10.  The breed of dog does not justify a fatal shooting, Azurdia v. City of N.Y., No. 18CV4189-ARR-PK, 2019 WL 1406647, at *8 (E.D.N.Y. Mar. 28, 2019) (citing Branson v. Price, No. 13-cv-03090-REB-NYW, 2015 WL 5562174, at *6 (D. Colo. Sept. 21, 2015)); Matteson, supra, 2019 WL 2192502, at *8.  The breed may be a factor considered when assessing the reasonableness of a seizure, Matteson, supra, at *8.  In Matteson, officers mortally wounded an American Staffordshire Terrier/Lab mix dog, id. at *1 (also known as a pit bull, id. at *8 n.2).  But the breed of the dog by itself does not make a "shoot first and ask questions later" technique reasonable, id. at *8.

The mere presence of a dog (absent actions or menace by the dog or some sign of aggression) is insufficient to be reasonable seizure, Strong v. Perrone, No. 17CV6183, 2020 WL 1445877, at *4 (W.D.N.Y. Mar. 25, 2020) (Geraci, C.J.).  The dog's general

16

temperament also is relevant, id. at *5; Matteson, supra, 2019 WL 2192502, at *8.  On the other hand, where the dog manifests signs of aggression, "courts regularly find that it is reasonable for officers to defend themselves," Strong, supra, 2020 WL 1445877, at *4 (citing Carroll, supra, 712 F.3d at 652; Kendall, supra, 237 F. Supp. 3d at 1169).  For example, in Strong, Chief Judge Geraci found in denying defendants motion for summary judgment that there was enough direct and circumstantial evidence that a reasonable jury could find that the dog was not displaying signs of aggression, 2020 WL 1445877, at *4.

The present case, however, involves the wounding of Lady, regardless of the alleged mortal intention of Defendant McCarthy.  Save this wounding, Lady was not physically taken on July 25, 2014.  Plaintiffs were allowed to take Lady to the veterinarian for treatment later that day.  Days later, Lady was seized by Town of Sardinia animal control.

Given this scenario, have Plaintiffs alleged that Lady was "seized" for Fourth Amendment purposes?  At least one court has found that a plaintiff has stated a Fourth Amendment seizure claim for the wounding of their dog during an arrest, Brandon v. Village of Maywood, 157 F. Supp. 2d 917, 930-31 (N.D. Ill. 2001) (plaintiff's dog shot 19 times but not killed, court considered Fourth Amendment seizure in split second decision and officers having a deemed strong interest to avoid injury from the dog); Bateman v. Driggett, No. 11-13142, 2012 WL 2564839 (E.D. Mich. July 2, 2012).  The district court in Bateman held that the shooting and severe injury of a pet pit bull "was [a] meaningful interference with [plaintiff's] possessory interests in his pet dog," 2012 WL 2564839, at *7.  Whether the Fourth Amendment is violated in wounding Lady then turns on whether the shooting was reasonable under the circumstances, id.

Lady was described in the Amended Complaint as 65-pound two-year-old pit bull terrier (Docket No. 20, Am. Compl. ¶¶ 29, 8, 30).   Lady allegedly was not charging Defendants, although Defendant McCarthy believed otherwise (id. ¶ 32), that she was a dog allowed to range her yard and was sauntering to McCarthy and Noecker as they entered the backyard (id. ¶¶ 30, 33).   They allege that McCarthy was yards away from Lady when he shot her.   They also contend that Defendants lack evidence of being bitten by Lady.   (Id. ¶ 42.)

Unlike most of the cases cited, this case has a motion to dismiss pending rather than a motion for summary judgment or following a trial.   Plaintiffs' allegations have to be accepted as true for the motion to dismiss.   At this stage, Plaintiffs merely need to allege the seizure (here the wounding) and that the seizure was not reasonable.   If so alleged, the validity of the allegations would be tested at later stages.   Given that this is at the pleading stage and absent any discovery, Plaintiffs have alleged an unreasonable seizure by wounding a dog with no evidence of danger from that animal.   Therefore, the County Defendants' Motion to Dismiss (Docket No. 25) the First Cause of Action is **denied**.

C.   Fourth Cause of Action

Defendants argue that Plaintiffs' deprivation of property claim for the shooting of Lady fails to state a cause of action by failing to state a policy or custom (Docket No. 25, Defs. Memo. at 8-12).   Plaintiffs cite to two other instances of what they term "puppycide" (Docket No. 20, Am. Compl. ¶ 91), the Sheriff's department shooting of dogs during execution of searches.   One case, a search in Buffalo in 2016 (id.), occurred after the July 2014 incident.

Defendants contend that Erie County and Sheriff Howard cannot be held solely liable through vicarious liability (Docket No. 25, Defs. Memo. at 10 n.1, citing Monell, supra, 436 U.S. at 694; Villar v. Howard, 126 A.D.3d 1297, 1299, 6 N.Y.S.3d 811, 813 (4th Dep't 2015)).  They also argue that Plaintiffs made no specific policy or custom allegation required to pass muster as pleading under Twombly (Docket No. 25, Defs. Memo. at 9, 10).

Plaintiffs argue that the policy was the reckless use of force against dogs during Sheriff's Department searches allowed to occur because of the failure of policy makers to train and supervise their subordinates (Docket No. 28, Pls. Memo. at 7; see Docket No. 20, Am. Compl. ¶ 91), see City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989).

Failure to train is an actionable policy only where that failure reflects a deliberate or conscious choice by the municipality, id. at 389 (see Docket No. 30, Defs. Reply Memo. at 5).  "Monell's rule that a city is not liable under § 1983 unless a municipal policy causes a constitutional deprivation will not be satisfied by merely alleging that the existing training program for a class of employees, such as police officers, represents a policy for which the city is responsible," id.  Plaintiffs need to allege that the training program is inadequate, and that inadequacy reflects municipal policy, id. at 390.  "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train," Connick v. Thompson, 563 U.S. 51, 61 (2011); Griffin v. Delvecchio, No. 16CV6029, 2016 WL 3232260, at *4 (W.D.N.Y. June 13, 2016) (Siragusa, J.).  As Justice Clarence Thomas noted in Connick, deliberate indifference in training "'is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action,'" 563 U.S. at 61 (quoting Board of Comm'rs of Bryan

County v. Brown, 520 U.S. 397, 410 (1997)).  A lesser standard for failure to train would devolve into respondeat superior liability on municipalities, id. at 62 (quoting City of Canton, supra, 489 U.S. at 392).  Proof of a policy of inadequate (or here apparently nonexistent) training requires allegation that "the inadequacies resulted from conscious choice—that is, proof that the policymakers deliberately chose a training program which would prove inadequate," City of Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985); Griffin, supra, 2016 WL 3232260, at *4.

Plaintiffs here allege that the County and Sheriff Howard allowed Lady to be shot by McCarthy as part of a customary practice of the County (Docket No. 20, Am. Compl. ¶ 90).  In an over four-page long[2] paragraph in the Amended Complaint, Plaintiffs assert their failure to train allegation:  describing the legal standard; setting forth McCarthy's shooting of Lady; providing two other examples (among unknown number of others) of Sheriff's Deputy shootings of dogs incident to searches; subsequent attempts to have animal control officers dispose of the injured or dead animal; "superficial 'reviews'" of the discharge of the firearms; McCarthy allegedly stating that there was no training in relation to animals; with these repeated violations amounting to deliberate indifference by Erie County; and that Sheriff Howard would know that his officers would confront dogs and yet failed to ensure their proper training for dealing with them (id. ¶ 91).

In this case, Lady was not disposed of by animal control on July 25, 2014, although Sheriff's Deputies later filed a dangerous dog charge to have Lady confiscated.  As Defendants contend (Docket No. 25, Defs. Memo. at 9), Plaintiffs make only conclusory allegations and far fewer factual allegations.  The only factual allegations are McCarthy

---

[2]Cf. Fed. R. Civ. P. 10(b) (claims stated in numbered paragraphs "each limited as far as practicable to a single set of circumstances").

denying that he received any training regarding handling animals, his shooting of Lady, and the two other officer shooting of dogs during searches.  This alone is not enough to meet Plaintiffs' burden under Twombly to assert sufficient factual matter to state a plausible claim of municipal liability.  Plaintiffs do not allege that this failure to train officers in how to deal with dogs was a deliberate or conscious choice.  Training (or the lack thereof) at the time of Lady's shooting would have been required from the one stated instance of Sheriff's Deputy shooting of a dog and Plaintiffs' generic allegation of more incidents of Sheriff's Department shootings of dogs.  To allege the failure to train was a deliberate or conscious choice of Defendants, Plaintiffs needed to plead more than the incident in this case and one other example to justify the need for such training, see Griffin, supra, 2016 WL 3232260, at *3-4 (a single incident in insufficient to meet requirement for a Monell claim for showing a custom, practice or policy arising from a failure to train).

Therefore, Defendants' Motion to Dismiss (Docket No. 25) to dismiss the Fourth Cause of Action is **granted**.

D.  Fifth Cause of Action

Defendants next contend that Megan Shimburski's Fifth Cause of Action against Navarro and Captain Savage fails because she fails to allege that Navarro and Captain Savage had any role in the dangerous dog hearing of August 12, 2014, and had no obligation to instruct the town court how to proceed during that hearing (Docket No. 25, Defs. Memo. at 18).

Defendants attach a copy of the Judiciary Law Section 44 proceeding against Town Justice Heintz following that hearing (Docket No. 25, Defs. Atty. Decl. ¶ 6, Ex. C, In

the Matter of the Proceeding Pursuant to Section 44, Gene R. Heintz, 2015 WL 9590797 (N.Y. Comm'n on Judicial Conduct Dec. 17, 2015)). The determination of the Commission on Judicial Conduct in that proceeding is illuminating.  Defendants McCarthy and Graham filed a Dangerous Dog Complaint on August 5, 2014, alleging that on July 25, 2014, a pit bull owned by Plaintiff "attempted to attack Detective McCarthy as he, Detective Graham and Detective Matthew Noecker approached the home of Ms. Shimburski's parents, looking for Ms. Shimburski's boyfriend," id., 2015 WL 9590797, at *1.   Town Justice Heintz, a layperson judge on the town bench since January 2014, issued the seizure order and presided over the dangerous dog proceeding in August, id.   The dangerous dog hearing was Justice Heintz' first hearing, id. at *3.  The Commission found that Justice Heintz erred in sending hearing notices only to witnesses that the judge thought would favor the town in seizure of the dog; summarily ending the hearing at the conclusion of the prosecution's case; not allowing Plaintiff or her witnesses to testify; and issuing a decision for the town "without including statutorily-mandated conditions consistent with the ruling," id. at *1, 4.  The Commission admonished the judge, id. at *5.

Defendants argue that Plaintiff has not asserted a due process violation in Captain Savage or Navarro being present at the dangerous dog hearing (Docket No. 25, Defs. Memo. at 17).   They point out that some of Plaintiff's due process objections (sequestration of Plaintiff's witnesses) did not implicate due process interest (id.).  Megan Shimburski responds that the presence of Navarro, Captain Savage, and the "excessive amount of uniformed personnel" at the hearing can influence the fact finder and deprive her of due process (Docket No. 28, Pls. Memo. at 10).  Defendants replied denying that

the presence of law enforcement officers was not inherently prejudicial (Docket No. 30, Defs. Reply Memo. at 7-8).  This Court need not resolve these issues.

The named Defendants Navarro and Captain Savage generally had no role in how Justice Heintz conducted the hearing.  As the New York Commission on Judicial Conduct noted in its admonition, Justice Heintz was a lay jurist conducting his first hearing ever and made various procedural mistakes.  Most of Megan Shimburski's complaints on the conduct of that proceeding arise from these mistakes.  Had Navarro or Captain Savage attempted to intervene as Plaintiff believed they should have that intervention probably would have been in vain.  The Commission quoted the colloquy between Plaintiff's counsel and Justice Heintz as the jurist went from denying her motion to dismiss to directly finding (in error) that Lady was a dangerous dog solely upon the prosecution's evidence, id. at *2-3, 1, 4.  The due process violations alleged by Megan Shimburski arise from Justice Heintz' decisions.

The Amended Complaint merely alleges that Navarro and Captain Savage were "part of this entourage" of the other Deputies in the courtroom (Docket No. 20, Am. Compl. ¶ 100) and that Navarro orchestrated "such violations of due process" (id. ¶ 102).  Megan Shimburski has not alleged in the Amended Complaint that Captain Savage or Navarro orchestrated having the other uniformed officers present during the dangerous dog hearing (but cf. Docket No. 28, Pls. Memo. at 12).

Plaintiff fails to establish the duty either Navarro or Captain Savage had in ensuring the proper conduct of this dangerous dog proceeding.  As a public proceeding, Navarro and Captain Savage had a right to be present.  Plaintiffs' counsel wrote to the County Attorney and Sheriff Howard on August 10, 2014, advising them of the dangerous dog

23

proceeding and seeking their intervention to dismiss the charges (Docket No. 25, Defs. Atty. Decl. ¶ 6, Ex. B; id., Defs. Memo. at 16-17).  Thus advised of the proceeding, Plaintiff should not be surprised if Detective McCarthy's supervisor and an attorney from the Erie County Attorney's office were present at the dangerous dog proceeding (id. at 17).

Plaintiffs also allege that the process for the dangerous dog hearing was inadequate (Docket No. 20, Am. Compl. ¶ 99) without stating the deficiencies or alleging the role (if any) the Navarro or Captain Savage had in issuing the process.  Again, the Commission on Judicial Conduct found that Justice Heintz erred in sua sponte sending notices of the proceeding to witnesses he believed would help the prosecution.  Thus, Plaintiffs fail to allege a substantive due process claim regarding this defective process.

Megan Shimburski complains about the '"lined deputies" that encircled the courtroom during that proceeding, while only naming two purported members of that entourage (Navarro and Captain Savage) (id. ¶ 100).  She argues that they prejudiced the proceeding and affected Justice Heintz.  This allegation does not plausibly state a claim.  Plaintiffs fail to allege that these officers were present at the direction of Captain Savage or deny that they were present for other business (for example, as witnesses in Lady's dangerous dog hearing or other cases scheduled that evening) (see Docket No. 30, Defs. Reply Memo. at 8).  Defendants reply that the cases cited by Plaintiffs (Docket No. 28, Pls. Memo. at 11, citing Holbrook v. Flynn, 475 U.S. 560 (1986); Taylor v. Kentucky, 436 U.S. 478 (1978)) involve jury trials and the impressions of litigants made upon jurors (Docket No. 30, Defs. Reply Memo. at 7-8).  Here, that distinction is lessened because it was a bench proceeding but presided over by a lay jurist conducting his very first proceeding.  Nevertheless, Plaintiffs fail to state a claim here.

Plaintiffs did allege that Captain Savage excluded two of Megan Shimburski's witnesses from the proceedings without a basis (Docket No. 20, Am. Compl. ¶ 101). Although Defendants argue that sequestration of witnesses is common and does not violate due process (Docket No. 25, Defs. Memo. at 17-18), the prosecution did not move to sequester witnesses (although, according to the Commission's findings, the prosecutor did object to the presence of one witness, 2015 WL 9590797, at *2), Megan Shimburski did not disclose her witnesses to be sequestered, and the court did not order the sequester.   It was not clear from this record whether Justice Heintz ordered Captain Savage to remove the two witnesses.  Again, from the Commission's admonition order, it noted that Megan Shimburski's counsel said that Sheriff's Deputies had directed the animal control officer (another witness for her) to leave the courtroom, id., with Justice Heintz stating that he did not have a witness list to know who was to appear. Thus, it appears on this record that Captain Savage acted on his own to exclude Megan Shimburski's witnesses; at this stage, this Court merely notes that Plaintiffs have alleged a cause of action regarding the removal of these witnesses.

Therefore, at this pleading stage, Plaintiffs **have alleged a cause of action** against Captain Savage for removing Megan Shimburski's witnesses apparently without due process.  Defendants' Motion to Dismiss (Docket No. 25) against this claim against Captain Savage is **denied** but their motion to dismiss other claims against Captain Savage and those claims against Navarro is **granted**.

E.  "Sixth" Cause of Action for Punitive Damages

First, Defendants argue that all Plaintiffs had not asserted punitive damages against Captain Savage and Navarro; that only Megan Shimburski alleged claims against

these two defendants (Docket No. 25, Defs. Memo. at 19) for compensatory and punitive damages.  Plaintiffs have not addressed this argument distinguishing the claim of Megan Shimburski as opposed to the claim of all Plaintiffs (see Docket No. 30, Defs. Reply Memo. at 9).  The claims against Navarro and Captain Savage only arise from the dangerous dog hearing in which Megan Shimburski only was a party.  As just stated, the only remaining claim here is against Captain Savage for removing Shimburski's witnesses from that courtroom.  Therefore, the other Plaintiffs lack a claim for punitive damages from Navarro or Captain Savage.  As held above, Megan Shimburski also fails to state a claim for punitive damages against Navarro because her damage claim is premised on her successfully alleging a substantive claim against him.  She still alleges potential punitive damages against Captain Savage.

Next, as Defendants point out (Docket No. 25, Defs. Memo. at 19-20), Plaintiffs have not made specific factual allegations against Sheriff Howard or the detective Defendants to state intentional or malicious conduct warranting punitive damages. Plaintiffs concede that punitive damages are not available against municipalities or those acting in their official capacity for the municipality (cf. Docket No. 28, Pls. Memo. at 16-18).

Defendant's Motion to Dismiss the punitive damages claims (Docket No. 25) is **granted in part, denied in part**.  Punitive damage claim survives against defendant Savage.

## IV.    Conclusion

For the reasons stated above, the County Defendants' Motion to Dismiss (Docket No. 25) is **granted in part, denied in part**.  Plaintiffs have alleged their First Cause of

Action for the violation of the Fourth Amendment in seizing Lady by unreasonably wounding her; the defense Motion to Dismiss is **denied**. Plaintiffs' Fourth Cause of Action is **dismissed**; thus, claims against Erie County and Sheriff Howard are **dismissed**. Plaintiff Megan Shimburski's Fifth Cause of Action against Captain Savage survives this motion, while her claims against Navarro are dismissed. Plaintiffs' punitive damages claims are **dismissed in part** but remain alleged against Defendant Captain Savage under the Fifth Cause of Action for removing Megan Shimburski's witnesses.

Following disposal of this motion, Defendants sought dismissal of only some of Plaintiffs' causes of action. The defense did not address the Second and Third Causes of Action for alleged unlawful entry and unreasonable seizure of Plaintiffs during the July 25, 2014 search (see Docket No. 30, Defs. Reply Memo. at 3). Thus, Plaintiffs' claims against McCarthy, Noecker, and Graham, for illegal seizure of Lady by wounding her; unlawful entry; and unreasonable seizure, false arrest, and false imprisonment of Plaintiffs remain (the First, Second, and Third Causes of Action). The remaining Defendants are McCarthy, Noecker, Graham, and Captain Savage, while dismissed by this Decision and Order are Defendants County of Erie, Sheriff Timothy Howard, and Thomas Navarro.

Plaintiffs shall amend the Complaint (cf. Docket No. 20) reflecting this Decision and Order as well as the Stipulation (Docket No. 35) dismissing claims against DeGoiler. They shall serve and file this Second Amended Complaint by **Friday, October 23, 2020.** Remaining Defendants shall answer or move against this Second Amended Complaint within fourteen (14) days of its service. Upon the filing of that Answer, this case will be referred to a Magistrate Judge to consider pretrial matters. With this referral to the

Magistrate Judge, this Court commends to the parties to consider early intervention by a mediator or other neutral; the Magistrate Judge is encouraged to facilitate the selection of a mediator and the prompt conduct of an initial mediation session.  To ensure progress is made in this case and movement to its swift resolution, the Court also urges the Magistrate Judge to schedule a status conference with the remaining parties as soon as feasible.

## V.    Orders

IT IS HEREBY ORDERED, that the County Defendants' Motion to Dismiss (Docket No. 25) is GRANTED IN PART and DENIED IN PART, as specified above;

FURTHER, that claims against Defendants the County of Erie, Sheriff Timothy Howard, and Thomas Navarro are DISMISSED;

FURTHER, Plaintiffs shall serve and file a Second Amended Complaint consistent with this Decision and Order by Friday, October 23, 2020;

FURTHER, that the remaining Defendants shall serve and file an Answer within fourteen (14) days of service of the Second Amended Complaint;

FURTHER, that upon the filing of that Answer, this Court will refer this case to a Magistrate Judge for further proceedings, including conducting a status conference and scheduling of mediation.

SO ORDERED.


Dated:        September 22, 2020
              Buffalo, New York


                                          s/William M. Skretny
                                          WILLIAM M. SKRETNY
                                          United States District Judge